NO. 13-11242

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

CORDELL DAVIS, Individually; ANTOINETTE TURNER, as next friend
for J.T.T., a minor,

Plaintiffs – Appellants

v.

J. ROMER, in his individual capacity,

Defendant – Appellee

-------------------------------------------------------------------------------------------

LESLEE MARIE MARTIN, as next friend for C.T.T., JR., a minor;
ALICIA DE'SHON WHITE, as next friend for T.L.T., a minor;
PATRICIA THOMAS, as next friend for D.M.G., a minor,

Plaintiffs – Appellants

v.

J. ROMER, Individually and in His Official Capacity,

Defendant – Appellee

-------------------------------------

**On Appeal From The United States District Court**
**For The Northern District of Texas, Fort Worth**

_____

PLAINTIFFS-APPELLANTS RECORD EXCERPTS

_____

 */s/ Kirk Claunch*
KIRK CLAUNCH
State Bar No. 04326075
2912 West 6th Street
Fort Worth, Texas 76107
(817) 335-4003 phone
(817) 335-7112 fax


and


 */s/ Bobbie Edmonds*
BOBBIE EDMONDS
State Bar No. 06427900
Law Office of Bobbie Edmonds
Water Garden Place
100 E. 15th Street, Suite 410
Fort Worth, Texas 76104
(817) 332-6501/(817) 332-6599 FAX

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**TAB**

DOCKET SHEET..................................…………………………...    A

MEMORANDUM OPINION and ORDER…………………………    B

ORDER…………………………………………………………    C

FINAL JUDGMENT AS TO ROMER IN HIS OFFICIAL CAPACITY    D

FINAL JUDGMENT AS TO CERTAIN PARTY……………………    E

NOTICE OF APPEAL…………………………………………    F

CERTIFICATE OF SERVICE………………………………………    G

# TAB A

APPEAL,JURY,LEAD,PAPER_REQUIRED

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:13-cv-00198-A

| | |
|---|---|
| Davis et al v. City of Fort Worth | Date Filed: 03/12/2013 |
| Assigned to: Judge John McBryde | Jury Demand: Plaintiff |
| Case in other court:  17th District Court of Tarrant County, Texas, | Nature of Suit: 440 Civil Rights: Other |
| 017-264261-13 | Jurisdiction: Federal Question |
| USCA5, 13-11242 | |
| Cause: 28:1441 Petition for Removal | |

**Plaintiff**

**Cordell Davis**                                              represented by     **Kirk Matthew Claunch**
*individually*                                                                                   The Claunch Law Office
                                                                                                          2912 W Sixth Street
                                                                                                          Fort Worth, TX 76107
                                                                                                          817/335-4003
                                                                                                          Fax: 817/335-7112
                                                                                                          Email: claunchlaw3@earthlink.net
                                                                                                          *LEAD ATTORNEY*
                                                                                                          *ATTORNEY TO BE NOTICED*
                                                                                                          *Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Antoinette Turner**                                    represented by     **Kirk Matthew Claunch**
*as next friend for J.T.T., a minor*                                                (See above for address)
                                                                                                          *LEAD ATTORNEY*
                                                                                                          *ATTORNEY TO BE NOTICED*
                                                                                                          *Bar Status: Admitted/In Good Standing*

V.

**Consol Plaintiff**

**Leslee Marie Martin**                                represented by     **Bobbie Edmonds**
*as next friend for C.T.T., a minor*                                              Law Offices of Bobbie Edmonds
                                                                                                          Water Garden Place
                                                                                                          100 East 15th St
                                                                                                          Suite 410
                                                                                                          Fort Worth, TX 76102
                                                                                                          817/332-6501
                                                                                                          Fax: 817/332-6599 FAX
                                                                                                          Email: goodverdict@msn.com
                                                                                                          *LEAD ATTORNEY*
                                                                                                          *ATTORNEY TO BE NOTICED*
                                                                                                          *Bar Status: Admitted/In Good Standing*

**Consol Plaintiff**

                                                                     represented by

**Alicia De'Shon White**
*as next friend for T.L.T., a minor*

**Bobbie Edmonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Consol Plaintiff**

**Patricia Thomas**
*as next friend for D.M.G., a minor*

represented by **Bobbie Edmonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**J. Romer**
*in his individual capacity*
*TERMINATED: 10/15/2013*

represented by **Kenneth E East**
Foster & East
9001 Airport Frwy
Suite 675
North Richland Hills, TX 76180
817/788-1111
Fax: 817/485-2836 FAX
Email: ken1@airmail.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**City of Fort Worth**

represented by **Laetitia Coleman Brown**
Fort Worth City Attorney's Office
1000 Throckmorton
Fort Worth, TX 76102
817/392-6639
Fax: 817/392-8359
Email: laetitia.brown@fortworthtexas.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Monica Wood**
City of Fort Worth
1000 Throckmorton
Fort Worth, TX 76109
817/392-7600
Fax: 817/392-8359
Email: monica.wood@fortworthtexas.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/12/2013 | 1 (p.9) | NOTICE OF REMOVAL WITH JURY DEMAND from 17th District Court of Tarrant County, Texas, case number 017-264261-13 filed by City of Fort Worth. (Filing fee $350.00; receipt number FW019051) Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 2 (p.17) | Index of Documents Filed in State Court filed by City of Fort Worth (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 3 (p.43) | CERTIFICATE OF INTERESTED PERSONS by City of Fort Worth. (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 4 (p.46) | Standing ORDER Concerning Paper Filing in Cases Assigned to District Judge John McBryde...see order for specifics. (Ordered by Judge John McBryde on 3/12/2013) (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 5 (p.49) | New Case Notes: A filing fee has been paid. File to Judge McBryde. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 6 (p.51) | CERTIFICATE OF INTERESTED PERSONS by J. Romer. (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 7 (p.53) | NOTICE of Consent to Removal filed by J. Romer (krg) (Entered: 03/12/2013) |
| 03/12/2013 | 8 (p.55) | MOTION to Dismiss and Brief in Support filed by J. Romer (krg) (Entered: 03/12/2013) |
| 03/13/2013 | 9 (p.79) | ORDER... that plaintiffs by March 27, 2013, file and serve an amended complaint... that by April 10, 2013, defendants file an answer, or otherwise respond, to the complaint... that by March 27, 2013, plaintiffs file under seal a document providing the full name of J.T.T., and identifying J.T.T.'s relationship to Turner... see Order for further specifics. (Ordered by Judge John McBryde on 3/13/2013) (krg) (Entered: 03/13/2013) |
| 03/26/2013 | 10 (p.82) | FIRST AMENDED COMPLAINT WITH JURY DEMAND against City of Fort Worth, J. Romer filed by Cordell Davis, Antoinette Turner. (krg) (Entered: 03/26/2013) |
| 03/26/2013 | 11 | (Document Restricted) Sealed Plaintiff's Disclosure of Minor's Name and Relationship to Antoinette Turner filed by Cordell Davis, Antoinette Turner (krg) (Entered: 03/26/2013) |
| 04/01/2013 | 12 (p.94) | RESPONSE filed by Cordell Davis, Antoinette Turner re: 8 (p.55) MOTION to Dismiss and Brief in Support Thereof. (cxb) (Entered: 04/01/2013) |
| 04/09/2013 | 13 (p.102) | |

| | | |
|---|---|---|
| | | MOTION to Dismiss First Amended Complaint for Failure to State a Claim and Brief in Support Thereof filed by J. Romer (krg) (Entered: 04/10/2013) |
| 04/10/2013 | 14 (p.129) | ANSWER to 10 (p.82) First Amended Complaint filed by City of Fort Worth. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. (krg) (Entered: 04/10/2013) |
| 04/11/2013 | 15 (p.137) | ORDER CONSOLIDATING CASES: Member case(s) 4:13-CV-234-A consolidated with lead case 4:13-CV-198-A. Leslee Marie Martin, Alicia De'Shon White and Patricia Thomas, added to case pursuant to consolidation. Attorney Bobbie Edmonds for Leslee Marie Martin,Bobbie Edmonds for Alicia De'Shon White,Bobbie Edmonds for Patricia Thomas added to case pursuant to consolidation... all claims and causes of action asserted by plaintiffs against Romer in his official capacity are hereby dismissed... that by April 25, 2013, plaintiffs file under seal a document providing the full names of C.T.T., T.L.T., and D.M.G., and identifying the relationship between each of these plaintiffs and his or her next friend. See Order for further specifics. (Ordered by Judge John McBryde on 4/11/2013) (krg) (Entered: 04/12/2013) |
| 04/15/2013 | 16 (p.140) | MOTION to Dismiss Certain Plaintiffs' First Amended and Supplemental Original Petition for Failure to State a Claim and Brief in Support Thereof filed by J. Romer (krg) (Entered: 04/15/2013) |
| 04/23/2013 | 17 (p.166) | NOTICE of Compliance with Order to File Reference List of True Names for the Minor Plaintiffs Filed Under Seal re: 15 (p.137) Order Consolidating Cases,,, filed by Leslee Marie Martin, Patricia Thomas, Alicia De'Shon White (krg) (Entered: 04/23/2013) |
| 04/23/2013 | 18 | (Document Restricted) Sealed Reference List of True Names for the Minor Plaintiffs filed by Leslee Marie Martin, Patricia Thomas, Alicia De'Shon White (krg) (document will be served on opposing counsel per pltfs' atty) (Entered: 04/23/2013) |
| 04/23/2013 | 19 (p.168) | ANSWER to First Amended Complaint Filed by Plaintiffs' C.T.T., a minor, by and Through his Next Friend, Leslee Marie Martin; T.L.T., a minor, by and Through his Next Friend Alicia De'Shon White; and D.M.G., a minor, by and Through her Next Friend Patricia Thomas filed by City of Fort Worth. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. (krg) (Entered: 04/23/2013) |
| 04/30/2013 | 20 (p.177) | RESPONSE filed by Cordell Davis, Antoinette Turner re: 13 (p.102) MOTION to Dismiss (krg) (Entered: 04/30/2013) |
| 05/06/2013 | 21 (p.189) | RESPONSE filed by Leslee Marie Martin, Patricia Thomas, Alicia De'Shon White re: 16 (p.140) MOTION to Dismiss (krg) (Entered: 05/06/2013) |

| 05/13/2013 | 22 (p.198) | REPLY filed by J. Romer re: 13 (p.102) MOTION to Dismiss (krg) (Entered: 05/13/2013) |
| 05/20/2013 | 23 (p.203) | REPLY filed by J. Romer re: 16 (p.140) MOTION to Dismiss (krg) (Entered: 05/20/2013) |
| 06/13/2013 | 24 (p.208) | ORDER denying as moot 8 (p.55) Motion to Dismiss; denying 13 (p.102) Motion to Dismiss; denying 16 (p.140) Motion to Dismiss. See Order for further specifics. (Ordered by Judge John McBryde on 6/13/2013) (krg) (Entered: 06/14/2013) |
| 06/13/2013 | 25 (p.210) | ORDER... The Joint Status Report shall be filed by 4:00 p.m. on July 15, 2013... see Order for further specifics. (Ordered by Judge John McBryde on 6/13/2013) (krg) (Entered: 06/14/2013) |
| 06/25/2013 | 26 (p.225) | ANSWER to Davis Plaintiffs' 10 (p.82) First Amended Complaint filed by J. Romer. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. (dnw) (Entered: 06/25/2013) |
| 06/25/2013 | 27 (p.234) | ANSWER to Martin Plaintiffs' First Amended Complaint (filed 4/9/2013 in 4:13-cv-234-A) filed by J. Romer. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. (dnw) (Entered: 06/25/2013) |
| 06/25/2013 | 28 (p.244) | Unopposed MOTION to Modify 25 (p.210) Settlement Conference Order filed by J. Romer with Brief/Memorandum in Support. (dnw) (Entered: 06/25/2013) |
| 06/25/2013 | 29 (p.248) | ORDER granting 28 (p.244) Motion to Modify Settlement Conference Order: It is ORDERED that defendant J. Romer is not required to attend the first of the face-to-face settlement conferences in person. He shall be available by telephone during the conference. (Ordered by Judge John McBryde on 6/25/2013) (dnw) (Entered: 06/26/2013) |
| 06/27/2013 | 30 (p.249) | MOTION to Compel Plaintiffs' Rule 7(a) Replies and to Stay Discovery and Brief in Support Thereof filed by J. Romer (ewd) (Entered: 06/27/2013) |
| 07/02/2013 | 31 (p.256) | ORDER denying 30 (p.249) Motion to Compel... Romer shall have until August 19, 2013, to engage in discovery against plaintiffs regarding the issue of qualified immunity, and to file a motion for summary judgment on such issue... all discovery by plaintiffs against Romer are hereby stayed until September 3, 2013. See Order for further specifics. (Ordered by Judge John McBryde on 7/2/2013) (krg) (Entered: 07/03/2013) |
| 07/05/2013 | 32 (p.258) | Defendant J Romer's UNOPPOSED MOTION to Modify 31 (p.256) Order Regarding Qualified Immunity Related Deadlines and Brief in Support Thereof (wrb) (Entered: 07/05/2013) |
| 07/05/2013 | 33 (p.263) | |

| | | |
|---|---|---|
| | | ORDER granting 32 (p.258) Motion to Modify Order...Romer shall have until September 18 2013 to engage in discovery against plaintiffs regarding the issue of qualified immunity, and to file a motion for summary judgment on such issue of qualified immunity...all discovery by plaintiffs against Romer are stayed until October 3 2013. (Ordered by Judge John McBryde on 7/5/2013) (wrb) (Entered: 07/05/2013) |
| 07/11/2013 | 34 (p.264) | Joint STATUS REPORT filed by City of Fort Worth, Cordell Davis, Leslee Marie Martin, J. Romer, Patricia Thomas, Antoinette Turner, Alicia De'Shon White. (dnw) (Entered: 07/11/2013) |
| 09/18/2013 | 35 (p.274) | MOTION for Summary Judgment on the Issue of Qualified Immunity filed by J. Romer (krg) (Entered: 09/18/2013) |
| 09/18/2013 | 36 (p.277) | Brief in Support filed by J. Romer re 35 (p.274) MOTION for Summary Judgment (krg) (Entered: 09/18/2013) |
| 09/18/2013 | 37 (p.317) | Appendix in Support filed by J. Romer re 35 (p.274) MOTION for Summary Judgment (Attachments: # 1 Additional Page(s), # 2 Additional Page(s), # 3 Additional Page(s), # 4 Additional Page(s), # 5 Additional Page(s), # 6 Additional Page(s), # 7 Additional Page(s), # 8 Additional Page(s), # 9 Additional Page(s), # 10 Additional Page(s), # 11 Additional Page(s)) (krg) (Entered: 09/18/2013) |
| 10/09/2013 | 38 (p.567) | RESPONSE with Brief in Support filed by Cordell Davis, Leslee Marie Martin, Patricia Thomas, Antoinette Turner, Alicia De'Shon White re: 35 (p.274) MOTION for Summary Judgment (krg) (Entered: 10/10/2013) |
| 10/09/2013 | 39 (p.583) | Appendix in Support filed by Cordell Davis, Leslee Marie Martin, Patricia Thomas, Antoinette Turner, Alicia De'Shon White re 38 (p.567) Response (Attachments: # 1 Additional Page(s), # 2 Additional Page(s), # 3 Additional Page(s)) (krg) (Entered: 10/10/2013) |
| 10/15/2013 | 40 (p.684) | Brief in Support filed by J. Romer re 35 (p.274) MOTION for Summary Judgment. (mpw) (Entered: 10/15/2013) |
| 10/15/2013 | 41 (p.693) | MEMORANDUM OPINION and ORDER granting 35 (p.274) MOTION for Summary Judgment filed by J. Romer... all claims and causes of action asserted by any of the plaintiffs in this action, as consolidated, against Romer, in his individual capacity, be, and are hereby, dismissed... see Order for further specifics. (Ordered by Judge John McBryde on 10/15/2013) (krg) (Entered: 10/15/2013) |
| 10/15/2013 | 42 (p.718) | ORDER... all claims and causes of action asserted in this action, as consolidated, by plaintiffs, J.T.T., C.T.T., Jr., T.L.T., and D.M.G., each acting through a next friend, and Cordell Davis, against Romer, in his official capacity, be, and are hereby, dismissed without prejudice... from this point forward the style of this action shall show City of Fort Worth as the only defendant. See Order for further specifics. (Ordered by Judge John McBryde on 10/15/2013) (krg) (Entered: 10/15/2013) |

| 10/15/2013 | 43 (p.720) | FINAL JUDGMENT AS TO ROMER IN HIS OFFICIAL CAPACITY... all claims and causes of action asserted in this action, as consolidated, by plaintiffs, J.T.T., C.T.T., Jr., T.L.T., and D.M.G., each acting through a next friend, and Cordell Davis, against defendant J. Romer, in his official capacity, be, and are hereby, dismissed without prejudice. (Ordered by Judge John McBryde on 10/15/2013) (krg) (Entered: 10/15/2013) |
| --- | --- | --- |
| 10/15/2013 | 44 (p.721) | FINAL JUDGMENT AS TO CERTAIN PARTY... all claims and causes of action asserted in this action, as consolidated, by plaintiffs, J.T.T., C.T.T., Jr., T.L.T., and D.M.G., each acting through a next friend, and Cordell Davis, against defendant J. Romer, in his individual capacity, be, and are hereby, dismissed, with costs of court incurred by Romer taxed against plaintiffs, jointly and severally. (Ordered by Judge John McBryde on 10/15/2013) (krg) (Entered: 10/15/2013) |
| 10/28/2013 | 45 (p.722) | MOTION for Attorney Fees and Brief in Support filed by J. Romer (krg) (Entered: 10/28/2013) |
| 10/28/2013 | 46 (p.732) | Appendix in Support filed by J. Romer re 45 (p.722) MOTION for Attorney Fees (krg) (Entered: 10/28/2013) |
| 10/28/2013 | 47 (p.757) | BILL OF COSTS by J. Romer. (krg) (Entered: 10/28/2013) |
| 10/29/2013 | 48 (p.764) | ORDER re: 45 (p.722) MOTION for Attorney Fees: The court ORDERS that the plaintiffs in the above-captioned action file a response to such motion by 2:00 p.m. on November 5, 2013. (Ordered by Judge John McBryde on 10/29/2013) (mdf) (Entered: 10/29/2013) |
| 11/05/2013 | 49 (p.765) | RESPONSE filed by Cordell Davis, Leslee Marie Martin, Patricia Thomas, Antoinette Turner, Alicia De'Shon White re: 45 (p.722) MOTION for Attorney Fees (krg) (Entered: 11/05/2013) |
| 11/06/2013 | 50 (p.772) | REPLY filed by J. Romer re: 45 (p.722) MOTION for Attorney Fees (krg) (Entered: 11/06/2013) |
| 11/13/2013 | 51 (p.777) | NOTICE OF INTERLOCUTORY APPEAL to the Fifth Circuit as to 42 (p.718) Order, 44 (p.721) Judgment, 43 (p.720) Judgment, 41 (p.693) Memorandum Opinion and Order,, Terminate Motions, by Cordell Davis, Leslee Marie Martin, Patricia Thomas, Antoinette Turner, Alicia De'Shon White. Filing fee $455, receipt number FW020722. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. (tle) (Entered: 11/13/2013) |
| 11/14/2013 | | Confirmation of receipt of payment from Jim Claunch PC in the amount of $455.00. Transaction posted on 11/13/2013 12:00:00 AM. Receipt number FW020722 processed by mf. (alm) Lifted restriction on 11/14/2013 (alm). (Entered: 11/14/2013) |
| 11/20/2013 | | USCA Case Number 13-11242 in USCA5 for 51 (p.777) Notice of Appeal,, filed by Patricia Thomas, Leslee Marie Martin, Alicia De'Shon White, Antoinette Turner, Cordell Davis. (tle) (Entered: |

| | | 11/20/2013) |

13-11242.8

# TAB B



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CORDELL DAVIS, ET AL.,              §
                                    §
            Plaintiffs,             §
                                    §
VS.                                 §    NO. 4:13-CV-198-A
                                    §    (consolidated with
J. ROMER, ET AL.,                   §    No. 4:13-CV-234-A)
                                    §
            Defendants.             §

MEMORANDUM OPINION
and
ORDER

After having considered the motion for summary judgment
filed by defendant J. Romer ("Romer") in his individual capacity,
the responses thereto of minor plaintiffs, J.T.T., C.T.T., Jr.,
T.L.T., and D.M.G., each acting through a next friend, and
plaintiff Cordell Davis ("Davis"), the entire summary judgment
record, and applicable legal authorities, the court has concluded
that Romer's motion should be granted.

I.

Plaintiffs' Pleaded Claims

The plaintiffs in the above-captioned consolidated action
are J.T.T., C.T.T., Jr., T.L.T., and D.M.G., each a minor
appearing through a next friend, and Davis. The defendants are
Romer, individually and in his official capacity as a police
officer for the City of Fort Worth, and City of Fort Worth. All
claims against Romer arise from an incident that occurred the

evening of February 28, 2011.  The allegations of the complaints
in the consolidated actions are essentially identical as to the
alleged facts leading to the claims.  With minor variations, the
alleged facts are as follows:

The evening of February 28, 2011, Charal Thomas ("Thomas")
and Davis were occupants of a vehicle being driven by Thomas in
which Davis was the front seat passenger.  Three of Thomas's
children, C.T.T., Jr., T.L.T., and D.M.G. were in the seat behind
them.  Thomas was pulled over by officers of the Fort Worth
Police Department for an alleged misdemeanor traffic violation.
He was detained for a period of time before a decision was made
to arrest him for outstanding misdemeanor traffic ticket
warrants.

When the officers attempted to arrest Thomas, he left the
scene in his vehicle.  Romer jumped onto the vehicle as Thomas
drove away.  After Romer jumped onto the running board of the
moving vehicle, he drew his weapon and fired twelve rounds into
the vehicle with the intent to kill or seriously injure Thomas.
Eight of the rounds struck Thomas, causing his death.  Davis and
the children were subjected to the fear of injury or death by
reason of Romer's conduct.

The causes of action asserted by plaintiffs against Romer
were (1) claims under 42 U.S.C. § 1983 that Romer's use of deadly

and excessive force violated the Constitutional rights of Thomas and the passengers in the vehicle, (2) state law claims of intentional infliction by Romer of emotional distress on the occupants of the vehicle, and a bystander claim by those occupants, and (3) claims under the Texas Wrongful Death statute. In addition, plaintiffs alleged that the losses they suffered were proximately caused by grossly negligent and reckless conduct on the part of Romer, which constituted malice and deliberate indifference.

Thomas was survived by five children--J.A.C., who is an adult, the three who were passengers in the vehicle, and J.T.T. All of the minor children suffered damages resulting from their loss of Thomas's love, support, companionship, society, maintenance, services, advice, counsel, and contributions of pecuniary value.

II.

### Pertinent Affirmative Defenses Pleaded by Romer and the Grounds of His Motion for Summary Judgment

Romer's answers to the complaints include as affirmative defenses (1) qualified and official immunity, based on the facts that on the occasion in question he was performing discretionary functions within the course and scope of his employment and authority as a police officer, and his actions were objectively reasonable and not violative of any of plaintiffs' clearly

3

established statutory or Constitutional rights and (2) that all
of plaintiffs' state law claims are barred by the election of
remedies statute, section 101.106 of the Texas Civil Practice and
Remedies Code.  Those same affirmative defenses served as grounds
of Romer's motion for summary judgment.

III.

Pertinent Summary Judgment Evidence

The summary judgment record contains several versions of the
events of February 28, 2011, that led to Thomas's death.  In
summary form, they are as follows:

A.    Romer's Version

Romer's version is presented by his summary judgment
affidavit.  On February 28, 2011, he was working as a Fort Worth
patrol officer.  He and two other fully uniformed Fort Worth
police officers were providing support to two undercover
officers.

The undercover officers communicated to the uniformed
officers by radio that they were observing a house that had been
linked to potential illegal narcotic activity by Thomas.  They
radioed that a person who appeared to be Thomas and another male
had left the house and entered a vehicle, a Ford Expedition, that
reportedly Thomas used to transport narcotics.  As the undercover
officers were following the vehicle, they radioed that they had

4

observed its driver, Thomas, commit two traffic violations.
Romer and the other uniformed officers were asked to initiate a
traffic stop.  They did so.  Thomas's vehicle pulled into the
parking lot of a gas station.

After Thomas's vehicle stopped, Romer approached the
passenger side of the vehicle, and obtained the identity of the
front seat passenger, Davis.  Another officer approached the
driver's side.  Romer, through radio contact with the undercover
officers, obtained details about Thomas and his reported drug
activities.  When Thomas opened his wallet to get his drivers
license to display to the officers who made the initial contact
with him, they saw that he had an extremely large amount of cash,
consistent with drug trafficking.

Once the identities of the driver and front seat passenger
were ascertained, a computer research disclosed that Thomas had
four arrest warrants out of Dalworthington Gardens, Texas, and
that Davis had multiple warrants out of the Fort Worth municipal
court.  The officers decided to take Thomas into custody.  By
then, Thomas had raised his window more than halfway up.  One of
the officers told Thomas that he needed to step out, and when
Thomas inquired as to what was going on, he was told of the
warrants out of Dalworthington Gardens and that he was under
arrest and needed to step out.  Thomas refused to get out of his

vehicle.  When an officer pulled on the door handle, Thomas
locked the door by activating the control on his armrest.  When
the officer told Thomas to unlock the door, Thomas responded that
he was not going to jail.

At that point, Romer reached into Thomas's vehicle, through
the partially-open driver's side window, with his left hand in an
attempt to unlock the door.  Thomas slammed the gear shift into
drive and simultaneously rolled up the window on Romer's left
arm.  Thomas's vehicle immediately lurched forward.  Romer tried
to pull his left arm out, but, because of a bulky watch he was
wearing on his left wrist, he could not remove his arm.

As Thomas's vehicle was accelerating forward, Romer, by
grasping with his right hand the vehicle's roof-mounted luggage
rack, was able to step onto the vehicle's running board.

As Thomas accelerated the vehicle onto the public roadway,
he jerked the steering wheel in what appeared to Romer to be an
attempt to throw him off the vehicle.  Romer could hear the
engine roaring loudly and could feel the vehicle continuing to
accelerate.  As the vehicle was headed onto the service road,
Romer's arm came free.  By then the vehicle was swerving so
abruptly that all Romer could manage to do was to grab onto the
luggage rack with both hands.  He was in fear of his life, and he
kept yelling to Thomas to stop the car.

Romer could see that they were rapidly heading toward the entrance ramp to the main highway. He was concerned that if he let loose of his hold on the vehicle he would suffer serious injury, if not death, from hitting the pavement or from being run over by Thomas's vehicle or other vehicles. He concluded that his best, if not only, reasonable option was to use his gun to try to disable the driver.

Romer used his right hand to unholster his handgun and, crossing his right hand over his left arm and, pointing the gun downward and forward toward the driver, he fired. He could not simply fire one shot and wait, fire another, and wait, etc., because Thomas's conduct had put Romer in a situation that any hesitation would only make the situation worse. Romer felt the speed of the vehicle continually increasing, and the entrance ramp onto the freeway was rapidly approaching. Romer fired a volley of shots, but that did not slow the vehicle down. After he fired an additional volley, he felt a sudden deceleration, and the vehicle veered to the right, heading toward the yards of houses situated along the service road. The last shot he fired was while they were in the street traveling at a high rate of speed. As the vehicle slowed down considerably, he jumped from the vehicle, trying to land in the grass of one of the yards, but missed and hit a driveway.

7

Photos were attached to Romer's affidavit that illustrated his description of events.

B.   Davis's Versions

A recorded interview of Davis was conducted by a detective the night of February 28, 2011.  Davis described being stopped by the police at the gas station and an officer coming up to the passenger side of the vehicle to talk to him.  Another officer went up to Thomas's side of the vehicle and told Thomas that they had a warrant for his arrest.  Davis knew that the persons who approached them at the gas station were police officers because they were in uniforms.  Thomas argued with the officers.  The officers were trying to open Thomas's door.  When they were trying to get Thomas out of the car, Thomas started driving off when one of the officers jumped onto the car.  Then shooting started, and Davis jumped out of the car.  Davis jumped out of the vehicle probably three or four minutes after they left the parking lot of the gas station.  He was in the middle of the road when he jumped.

The officer first told Thomas he was under arrest, and Thomas was arguing with him, and then the vehicle started moving when he saw an officer trying to jump on the windshield and, he thinks, another tried to jump on the back.  An officer was still on the vehicle as it was driving away.

8

Even though the officers did not tell Thomas that he was free to leave, Thomas took it upon himself to start driving off, and when he did that an officer jumped on the vehicle, on the driver's side. Davis told Thomas to pull over and stop. He did that because there was an officer on the side of the vehicle and other officers were there. The officers never gave Thomas any indication that he was free to leave.

Davis does not think Thomas reached a speed as much as forty or fifty miles an hour--he may have reached a speed of fifteen to twenty-five miles per hour.

Davis gave another version of the February 28, 2011 incident during his deposition taken September 11, 2013. He said that the officers and Thomas went back and forth over whether he had traffic tickets or a traffic warrant, during which time Thomas's vehicle was still running. Thomas and an officer or officers started tussling, and that is when the truck started rolling off. Thomas drove off despite the fact that the officers told him he was under arrest. That bothered Davis. David told him to stop. When Davis was interviewed by police the night of February 28, he told them the truth.

He remembers that when Romer reached inside the vehicle with his left hand, Romer was trying to open the door. Romer's arm

was inside the vehicle when it started moving.  The car never

came to a stop after that until the shooting happened.

When Davis jumped out of the truck, he got hurt.  His arm

and legs were scraped all the way to the meat, and blood was

everywhere.  When he jumped, he tumbled, and it hurt a lot.  He

thinks the vehicle ran over his foot and broke it.

The officers never indicated to Thomas that he was free to

leave, and they made clear that they wanted to arrest Thomas.

Davis corrects on his deposition the statement he made on

the night of February 28 when he said that he jumped out of the

vehicle probably three or four minutes after they left the

parking lot of the gas station by saying he really meant to say

that he jumped out three or four seconds after they left the

parking lot.

At another point in his deposition, Davis said that Romer

ran around and jumped in front of the vehicle, up on top of the

hood, but he slid off, and then stepped back up on the vehicle.

After he stepped up on the vehicle, he was on the running board,

holding on, and he and Romer were looking at each other.

Davis gave a third version by an affidavit dated October 17,

2013, that plaintiffs presented as part of their summary judgment

evidence.  His description of events in this version was as

follows:

> The Police told Charal Thomas he was under arrest.
> Charal Thomas left the scene.  He did not drive off at
> a high rate of speed.  Officer Romer had his left arm
> in the window when Charal Thomas left the scene and
> drove off.  Officer Romer immediately removed his left
> arm from the vehicle when it started to move.  As the
> vehicle turned slightly to the left to exit the Zoom-
> In, Officer Romer ran and tried to jump on top of the
> hood.  He slid off when the vehicle turned to the right
> to enter the access road.  He then climbed onto the
> vehicle a second time as the vehicle moved down the
> service road by stepping onto the running board and
> grabbing hold of the luggage rack on the roof.

> It was after Officer Romer got on the vehicle the
> second time that he pulled his pistol and fired into
> the vehicle.  I do remember hearing the first shot
> being fired from another officer before we left the
> parking lot.

Resp., App. at 14-15.

C.    Raphael Ramos, Sr.'s Version

Raphael Ramos, Sr. was an eyewitness to the events at the

gas station on February 28, 2011.  He was sitting in his car

waiting for his ex-wife to arrive so that they could make

arrangements relative to their children.  He referred to Thomas's

vehicle as "the SUV."  He described what he saw as follows:

> I pulled into the lot and parked on the south side
> of the property, waiting for my ex-wife to arrive.  So
> from where I was seated in my car, I could see directly
> to where the SUV was located.  At that time, there
> appeared to be four police officers near the vehicle.
> I sat there for several minutes and observed officers
> walking to and from the SUV and back to the police van

11

and other police car.  Then, all of a sudden, I noticed there was a lot of movement around the vehicle.  There were officers standing beside and behind the vehicle at the time, and there was one or more officers by the driver-side window.

Then, shortly after that, I noticed there was some sort of a struggle.  It looked like they were trying to remove the driver from the SUV.  At that point, the SUV suddenly and very rapidly accelerated away, while turning sharply to the left, toward the officers on the driver's side, in order to exit the parking lot.  The acceleration was extreme; it appeared that the driver had pushed the accelerator to the floor in order to speed away as absolutely rapidly as possible.  At that moment, I noticed what looked like two officers on the driver's side, one of whom ended up standing on the side of the vehicle as it sped away.  It looked like that officer was holding on to [sic], or being held onto, the vehicle somehow.  I could not see exactly what was causing the officer to be attached to the vehicle, but what I did see was perfectly consistent with the officer's arm being trapped inside the driver's side window, which is what I understand the officer later reported had happened.

As the vehicle left the parking lot it was headed south on the Loop 820 service road and was angling across the lanes toward the freeway retaining wall and the on-ramp to southbound I-820.  I remember clearly that my initial thought was that the officer was going to die.  I initially believed that the SUV driver was going to drive him into the wall, crushing him, and then it appeared that he was heading toward the freeway.  In my opinion, the SUV appeared quickly to reach speeds that would have caused the officer to suffer serious injury or even death had he fallen off the vehicle onto the pavement.  At about the time the SUV was reaching the far side of the access road, rapidly approaching the on-ramp, I heard what sounded like a series of rapid gunshots.

I cannot say for sure how many shots were fired, but there were several bunched together.  I did not know who was firing the shots, but very soon after I

12

heard them, the SUV turned toward the right, away from the freeway and appeared to slow down. As all that was happening, I noticed one officer running up the street after the SUV and then the police vehicles started driving in that direction as well.

After the SUV crossed back across the right-hand lane, it drove into a yard and came to a stop. As it entered the yard, the officer that had been on it, fell to the ground. At about the time that officer was able to stand up, the officer that had been running arrived at the location, and the two of them seemed to take the driver into custody. After the other officers arrived at that location, they got out of their vehicles and appeared to be searching for the other occupants of the SUV. Sometime definitely before the SUV entered the yard and came to a stop all the gunshots had stopped. I am positive that there were no additional gunshots at any time after the SUV entered the yard. From where I was, I could hear voices yelling from where the vehicle stopped, and I would have been able to hear if there had been any gunshots.

Mot., App. at 156-158.

D.  Plaintiffs' Summary Judgment Evidence Provided by the Three Children in Thomas's Vehicle

The versions of the minor plaintiffs who were in the vehicle are in the summary judgment record through excerpts from their deposition testimonies.

1.  Deposition Testimony of C.T.T., Jr.

C.T.T., Jr. was in the sixth grade when his deposition was taken in August 2013. There were three rows of seats in the SUV they were occupying at the time of the incident in question. C.T.T., Jr. was seated behind Davis in the second row of seats. T.L.T. and D.M.G. were seated in that same row.

13

The police pulled them over at the gas station.  He thinks his dad left the car running while the police were talking to him.  He believes the police officer who killed his dad rolled the window up.

When his dad drove off, he started pretty fast, was going slow when he turned, and then he started going fast.

Davis told his father to stop the car, and when his father kept driving, Davis jumped out of the car.  He thinks his father was trying to get on the highway at the time.

He remembers the police telling his dad that he was under arrest, and that's when his dad drove off.  C.T.T., Jr. said three police jumped on the car, and when his dad drove out of the gas station and turned two fell off, and the other one stayed on. The one who stayed on got his gun and started shooting.

2.    Deposition Testimony of T.L.T.

T.L.T. was in the third grade, about to go to the fourth, when her deposition was taken in August 2013.

The police stopped her dad at the gas station because they said he had passed a red light or a stop sign.  A policeman asked her dad for his license card.

After that, the police fought her dad over the steering wheel.  A policeman got his arm stuck in a window when the policeman pushed it up.  When her dad drove off, the officer was

14

hanging onto the side of the vehicle.  The car drove on both

sides of the road, going medium fast.  Her dad was trying to get

away from the police.  Her dad started driving after the police

told him that he was under arrest.  She knows that there was an

officer on the vehicle when her dad started driving because she

was in the middle and saw the officer.  She thought it was

dangerous for the police officer, and that he could have gotten

hurt.

    3.   <u>Deposition Testimony of D.M.G.</u>

D.M.G. was thirteen years of age when her deposition was

taken in August 2013.  She was seated behind her dad in the

Expedition.  When the police came up after they were pulled over

at the gas station and told her dad that he was under arrest, the

doors were locked and her dad's window was down all the way.

When the officer walked away, her dad rolled the window halfway

up.  When her dad drove away, police officers jumped on the

running board of his vehicle.  The only time an officer reached

inside the vehicle was when he tried to get the wheel.  That was

after the vehicle had started moving.

E.  <u>C.C. Drew's Version</u>

The version of C.C. Drew ("Drew") is set forth in his

affidavit, which was a part of Romer's summary judgment evidence.

Drew was a City of Fort Worth police officer who participated in

the stop of Thomas's vehicle at the gas station.  Romer and Drew

both approached the driver's side of the Expedition once the

decision was made to arrest Thomas.  Drew asked Thomas to step

out, and placed his hand on the door handle to open it.  When

Drew pulled the handle, he realized the door was locked; and, he

requested Thomas to unlock the door and to step out.  When Thomas

asked why he had to step out, Drew told him that they had

warrants out of Dalworthington Gardens and that he was going to

be placed under arrest.

     At that point, Thomas said that he was not going to jail,

and he moved his gear shift into the drive position and stomped

on the gas pedal.  Drew yelled to Romer to get out of the way,

and then it appeared to him that Romer was being drug by the

vehicle, and then he saw Romer get both of his feet on the

running board.

     The vehicle drove up onto the service road, going fast,

heading in the direction of the entrance ramp to Loop 820,

increasing its speed.  Drew was running after the vehicle when he

heard several shots, and then he saw the vehicle drive up into

one of the front yards.  When he saw Romer fall off the side of

the vehicle, he was not sure whether Romer was shot or had done

the shooting.  There were no more gunshots after the time the

vehicle was approaching the front yard.  Drew summed up his

reactions to the things he observed as Thomas was fleeing the gas

station as follows:

> There is no doubt in my mind that Officer Romer
> was in extreme danger as he was on the side of the
> fleeing vehicle, which was traveling at a high rate of
> speed toward the freeway entrance.  I saw the vehicle
> turn toward Romer as it sped off onto the service road
> and toward the entrance ramp.  Romer was on the driver
> side of the vehicle.  Almost immediately after the
> vehicle began moving it reached speeds that would have
> made it almost certain that Romer would have sustained
> serious, if not fatal, injuries had he jumped from the
> vehicle.  I believe he was in extreme danger from the
> impact related to any fall from the vehicle not to
> mention being hit by the vehicle itself or other
> vehicles, especially if the suspect vehicle had managed
> to enter the freeway.

Mot., App. at 207.

F.     T.J. Fornash's Version

The affidavit of T.J. Fornash ("Fornash") is part of Romer's

summary judgment evidence.  On February 28, 2011, Fornash was one

of the uniformed officers who participated in stopping Thomas's

vehicle at the gas station.  He is the officer who first went to

Thomas's side of the vehicle and asked to see his license and

proof of insurance.  He saw a large quantity of cash when Thomas

opened his wallet.  After the officers had a conference away from

the vehicle, Romer went back to get information from Thomas.

When the decision was made to arrest Thomas after they learned

that he had outstanding arrest warrants, officers went up to the

driver's side of Thomas's vehicle.  Fornash heard something that

17

sounded like a transmission being thrown into drive, and he heard

Romer yell "Stop, stop, stop, stop, stop." Mot., App. at 212.

He described what he perceived from that point forward until

shots were fired, saying:

> I hear a bunch of yelling and then I see the
> vehicle immediately cut left and hit Officer Romer and
> the next thing I see . . . I see Officer Romer kind of
> dragging one foot on the ground and he's kind of
> hanging like when the on . . . on the mirror's got a
> hold of him right here and it kind of like falls into
> the window that was . . . I don't know how far it was
> down but it's like his elbow fell in and I can see him
> struggling and they went from zero to fifty I guess
> maybe forty-five/fifty like that. And it looked like
> they were heading to the highway. I get on the radio,
> "Close the channel, close the channel, close the
> channel" and then uh, I think I was on PIC then I get
> on Main Air, I flip over on Main Air, "Close the
> Channel, close the channel, close channel" and then I
> hear, "Pop, pop, pop, pop, pop, pop" and then I start
> yelling, "Shots fired, shots fired, shots fired."

Id.

He saw the vehicle swerve side-to-side as the shots were

being fired, then he saw it go into a yard and saw Romer fall

off. No shots were fired after the vehicle entered the yard.

Fornash saw that Romer was in extreme danger as he was on

the side of the fleeing vehicle, which was traveling at a high

rate of speed toward the freeway entrance.

IV.

Analysis

For the reasons explained below, the court has concluded
that all grounds of Romer's motion for summary judgment have
merit.

A.    The Qualified and Official Immunity Grounds

Romer, a public safety officer, is entitled to assert
qualified immunity as a defense. Fraire v. City of Arlington,
957 F.2d 1268, 1273 (5th Cir. 1992). Qualified immunity shields
public safety officials when performing discretionary functions
"from civil damages liability as long as their actions could
reasonably have been thought consistent with the rights they are
alleged to have violated." Anderson v. Creighton, 483 U.S. 635,
638 (1987). The validity of a qualified immunity defense turns
on the objective legal reasonableness of the defendant's actions
assessed in the light of clearly established law. Id. at 639.
As the Fifth Circuit explained in Fraire,

> If reasonable public officials could differ on the
> lawfulness of the defendant's action, the defendant is
> entitled to qualified immunity. Thus, even when a
> defendant's conduct actually violates a plaintiff's
> constitutional rights, the defendant is entitled to
> qualified immunity if the conduct was objectively
> reasonable.

957 F.2d at 1273.

19

When an excessive force claim is asserted against a police officer, the plaintiff "must prove that the defendant's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to abuse of official power that shocks the conscience." Id. at 1274 (internal quotation marks omitted).

In the instant action, Thomas's injury was severe. However, there is no evidence in the summary judgment record from which the court could make a determination that Romer's actions were "grossly disproportionate to the need for action under the circumstances" or inspired by malice. Even if Romer arguably had an alternative to disabling Thomas by use of Romer's hand weapon, he would not have lost his qualified immunity defense for, as the Supreme Court explained in Hunter v. Bryant:

> The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued.

502 U.S. 224, 229 (1991) (internal quotation marks and citations omitted) (citing Malley v. Briggs, 475 U.S. 335, 343, 341 (1986); Davis v. Scherer, 468 U.S. 183, 196 (1984).

While there are inconsistencies in the summary judgment record as to the exact nature and sequence of the events that preceded Thomas's flight from the gas station parking lot onto the road, and toward the entrance onto the freeway, the undisputed summary judgment evidence is that in the course of attempting to arrest Thomas Romer ended up holding onto the side of the vehicle as Thomas was fleeing, that Romer's life was in danger because of the conduct of Thomas, and that an option Romer had to eliminate that danger was to disable Thomas by shooting him.  The Fifth Circuit has made clear that the point in time on which the court should focus in determining whether there is a qualified immunity defense is the moment of the threat to the officer, explaining in Rockwell v. Brown that:

> An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others. The excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force].

664 F.3d 985, 991 (5th Cir. 2011) (emphasis in original) (citing Fraire, 957 F.2d at 1276).

Also pertinent here, the Fifth Circuit was guided in Fraire by the Supreme Court's conclusion in Tennessee v. Garner that:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm,

21

> either to the officer or to others, it is not
> constitutionally unreasonable to prevent escape by
> using deadly force.

Fraire, 957 F.2d at 1276 (quoting from Tennessee v. Garner, 471

U.S. 1, 11 (1985)).  In Fraire, the Fifth Circuit explained that

once the facts that led to a confrontation between an officer and

a suspect have evolved to the point that the suspect is engaging

in conduct dangerous to the safety of the police officer, the

facts that led to the confrontation are no longer important, but

evaporate, and,

> The question, then, is whether under these
> circumstances a reasonable officer could conclude that
> [police officer] used force grossly disproportionate to
> need when he shot [suspect] in the belief that
> [suspect] was trying to kill [police officer] or cause
> great bodily harm by running over him with the truck.

Fraire, 957 F.2d at 1275.

The court is satisfied from the summary judgment evidence

that a reasonable police officer could conclude that conduct such

as Romer's would not violate the right of a person, such as

Thomas, to be free from excessive force.  See Fraire, 957 F.2d at

1274.  The undisputed summary judgment evidence establishes as a

matter of law that a reasonable police officer would, and could,

conclude that Romer's conduct in discharging his handgun as he

did at Thomas, under the circumstances existing at the time, was

not violative of Thomas's right to be free of excessive force.

As a matter of law, Romer's conduct was not grossly
disproportionate to Romer's need to protect himself from injury.
Moreover, if the court were to reach the malice issue, there is
no suggestion in the summary judgment record that Romer's conduct
was inspired by malice, or that his conduct amounted to an abuse
of an official power.    Stated simply, the summary judgment record
establishes as a legal matter that Romer's conduct was
objectively reasonable.

     For the reasons stated, the court has concluded that Romer's
qualified immunity defense has merit as to all claims asserted by
plaintiffs against Romer under 42 U.S.C. § 1983.    Similarly, the
official immunity status granted to police officers under state
law provides a defense to plaintiffs' state law claims against
Romer.    Texas law provides governmental officials immunity from
suit arising from the performance of their discretionary duties
in good faith so long as they are acting within the scope of
their authority.    Cantu v. Rocha, 77 F.3d 795, 808-09 (5th Cir.
1996); City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994).    The qualified and official immunity inquiries are
substantially similar.    Cantu, 77 F.3d at 808-09.    The court is
satisfied that the summary judgment record supports Romer's
official immunity ground as directed against plaintiffs' state
law claims.

B.    The Election of Remedies Ground

The court concludes that all of plaintiffs' state law claims would, in any event, be barred by the election of remedies statute, section 101.106 of the Texas Civil Practice and Remedies Code.  In their state court pleadings, plaintiffs alleged causes of action against City of Fort Worth under Texas's Tort Claims Act.  The fact that they have dropped those claims in the amended pleadings they filed after the actions were removed to this court does not save plaintiffs from the effect of the election of remedies statute.  Their bringing of those claims against the City of Fort Worth in litigation "constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a).

Thus, the Texas election of remedies statute provides an additional basis for grant of Romer's motion for summary judgment as to the state law claims.  See Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 657-58 (Tex. 2008); Nealon v. Williams, 332 S.W.3d 364, 365 (Tex. 2011); Franka v. Velasquez, 332 S.W.3d 367, 370-71 (Tex. 2011).

V.

<u>Order</u>

For the reasons stated above,

The court ORDERS that Romer's motion for summary judgment be, and is hereby, granted; and

The court further ORDERS that all claims and causes of action asserted by any of the plaintiffs in the above-captioned action, as consolidated, against Romer, in his individual capacity, be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissal.

SIGNED October 15, 2013.

_____
JOHN McBRYDE
United States District Judge

**TAB C**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 1 5 2013

CLERK, U.S. DISTRICT COURT

By _____
　　　　　　　　Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CORDELL DAVIS, ET AL.,　　　　§
　　　　　　　　　　　　　　§
　　　　　Plaintiffs,　　　　§
　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　§　　NO. 4:13-CV-198-A
　　　　　　　　　　　　　　§　　(consolidated with
J. ROMER, ET AL.,　　　　　§　　No. 4:13-CV-234-A)
　　　　　　　　　　　　　　§
　　　　　Defendants.　　　　§

## ORDER

Having granted the motion for summary judgment filed by
defendant J. Romer ("Romer") in his individual capacity, the
court is <u>sua sponte</u> dismissing all claims against Romer in his
official capacity, those claims being considered by law to be but
claims against his employer, City of Fort Worth, the remaining
defendant.  Therefore,

The court ORDERS that all claims and causes of action
asserted in the above-captioned action, as consolidated, by
plaintiffs, J.T.T., C.T.T., Jr., T.L.T., and D.M.G., each acting
through a next friend, and Cordell Davis, against Romer, in his
official capacity, be, and are hereby, dismissed without
prejudice.

The court determines that there is no just reason for delay
in, and hereby directs, entry of final judgment as to such
dismissal.

Inasmuch as the only remaining defendant in this action is City of Fort Worth,

The court ORDERS that from this point forward the style of this action shall show City of Fort Worth as the only defendant.

SIGNED October 15, 2013.

JOHN McBRYDE
United States District Judge

# TAB D

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 1 5 2013

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CORDELL DAVIS, ET AL.,           §
                                 §
            Plaintiffs,          §
                                 §
VS.                              §    NO. 4:13-CV-198-A
                                 §    (consolidated with
J. ROMER, ET AL.,                §    No. 4:13-CV-234-A)
                                 §
            Defendants.          §

## FINAL JUDGMENT AS TO ROMER IN HIS OFFICIAL CAPACITY

Consistent with the order signed in the above-captioned action on the date of the signing of this final judgment as to Romer in his official capacity,

The court ORDERS, ADJUDGES, and DECREES that all claims and causes of action asserted in the above-captioned action, as consolidated, by plaintiffs, J.T.T., C.T.T., Jr., T.L.T., and D.M.G., each acting through a next friend, and Cordell Davis, against defendant J. Romer, in his official capacity, be, and are hereby, dismissed without prejudice.

SIGNED October 15, 2013.

JOHN McBRYDE
United States District Judge

**TAB E**



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
CORDELL DAVIS, ET AL.,          §
                                §
              Plaintiffs,       §
                                §
VS.                             §   NO. 4:13-CV-198-A
                                §   (consolidated with
J. ROMER, ET AL.,               §   No. 4:13-CV-234-A)
                                §
              Defendants.       §
```

<u>FINAL JUDGMENT AS TO CERTAIN PARTY</u>

Consistent with the memorandum opinion and order signed in

the above-captioned action on the date of the signing of this

final judgment as to certain party,

The court ORDERS, ADJUDGES, and DECREES that all claims and

causes of action asserted in the above-captioned action, as

consolidated, by plaintiffs, J.T.T., C.T.T., Jr., T.L.T., and

D.M.G., each acting through a next friend, and Cordell Davis,

against defendant J. Romer, in his individual capacity, be, and

are hereby, dismissed, with costs of court incurred by Romer

taxed against plaintiffs, jointly and severally.

SIGNED October 15, 2013.


_____
JOHN McBRYDE
United States District Judge

**TAB F**



ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CORDELL DAVIS, ET AL. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 4:13-CV-198-A |
| | § | |
| J. ROMER, ET AL., | § | |
| | § | |
| Defendants | § | |

### PLAINTIFF'S NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Notice is hereby given that **CORDELL DAVIS, individually, and ANTOINETTE TURNER, as next friend for J.T.T., a minor, LESLEE MARIE MARTIN, as next friend for C.T.T. a minor, ALICIA De'SHON WHITE, as next friend for T.L.T., a minor, and PATRICIA THOMAS, as next friend for D.M.G., a minor,** hereinafter called Plaintiffs in the above named case hereby appeal to the United States Court of Appeal for the Fifth Circuit from the Order Granting J. Romer's Motion for Summary Judgment and the entry of Final Judgment as to such dismissal entered in this action on the 15th day of October, 2013.

Respectfully submitted,

KIRK CLAUNCH
State Bar No. 04326075
JIM CLAUNCH
State Bar No. 04326000

The Claunch Law Firm
2912 West Sixth Street
Fort Worth, Texas 76107
Telephone (817) 335-4003
Facsimile (817) 335-7112

**ATTORNEYS FOR PLAINTIFFS**
CORDELL DAVIS individually, and
ANTOINETTE TURNER, as next friend
for, J.T.T., a minor

-and-

BOBBIE EDMONDS
State Bar No. 06427900
Law Office of Bobbie Edmonds
Water Garden Place
100 E. 15th Street, Suite 410
Fort Worth, Texas 76104
(817) 332-6501/(817) 332-6599 FAX
e-mail: goodverdict@msn.com

**ATTORNEY FOR PLAINTIFFS**
LESLEE MARIE MARTIN, As Next
Friend For C.T.T., JR., A Minor,
ALICIA DeSHON WHITE, As Next
Friend For T.L.T., A Minor,
AND PATRICIA THOMAS, As Next
Friend For D.M.G., A Minor

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument was sent
to Defendants counsel of record, Mr. Kenneth E. East, 9001 Airport Freeway, Suite 675,
North Richland Hills, Texas 76180 and Ms. Laetitia Coleman Brown, Assistant City
Attorney, 1000 Throckmorton Street, Fort Worth, Texas 76102, via facsimile on this the
13th  day of November, 2013.

Kirk Claunch

# TAB G

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was sent to all counsel via regular mail on the 21st day January, 2014.

BOBBIE EDMONDS
Law Office of Bobbie Edmonds
Water Garden Place
100 E. 15th Street, Suite 410
Fort Worth, Texas 76104

KENNETH E. EAST
9001 Airport Freeway, Suite 675
North Richland Hills, Texas 76180
Attorney for Defendant J. Romer

LAETITIA COLEMAN BROWN
Assistant City Attorney
1000 Throckmorton Street
Fort Worth, Texas 76102
Attorney for Defendant City of Fort Worth


_/s/ Kirk Claunch_
Kirk Claunch
Attorney for Plaintiffs/Appellants